1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JOSE RAMIREZ,                          No.  2:13-cv-00679 MCE AC

12              Petitioner,

13        v.                                FINDINGS AND RECOMMENDATIONS

14   FRDERICK FOULK,

15              Respondent.

16

17        Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas

18   corpus pursuant to 28 U.S.C. § 2254, challenging his Tehama County conviction for a gang-

19   related carjacking.  ECF No. 1.  Respondent has filed an answer, ECF No. 15, and petitioner has

20   filed a traverse, ECF No. 20.  For the reasons that follow, the undersigned recommends that the

21   petition be denied

22   I.      Procedural and Factual Background

23        Petitioner was charged in Tehama County with carjacking (Cal. Pen. Code § 215(a)),

24   robbery (Cal. Pen. Code § 211), and street terrorism (Cal. Pen. Code § 186.22(a)).  The

25   information included allegations that the crimes were committed for the benefit of a criminal

26   street gang (Cal. Pen. Code § 186.2(b)(4) & (b)(1)(c)), that petitioner personally used a firearm

27   ////

28   ////

                                          1

1   (Cal. Pen. Code § 12022.53(b)), and that a principal used a firearm (§ 12022.53).  CT 27.[1]

2       A.  Evidence at Trial

3       The evidence at trial established the following facts.  On June 7, 2009, Bradley Brunson

4   received a phone call from Porche Hanna, a recent acquaintance, asking him to come over.  When

5   Brunson arrived at Hanna's residence, two men later identified as petitioner and Elfego Acevedo

6   were in the back yard.  Hanna asked Brunson to drive the two men back to Red Bluff.  All four

7   individuals got into Brunson's car, with Hanna in the front passenger seat and petitioner sitting

8   directly behind Brunson.

9       When they got to Red Bluff, petitioner told Brunson to exit the freeway and directed him

10  to a location on Bend Ferry Road.  Petitioner then pressed a gun to Brunson's back and told him

11  to stop the car.  When the car stopped, petitioner opened the door and pushed Brunson out and

12  onto the ground.  Acevedo got out and pinned Brunson to the ground while defendant held a gun

13  to Brunson's head and searched his pockets.  Petitioner told Brunson that if he moved, he would

14  be shot.  Petitioner took Brunson's wallet and cell phone from his pockets, then both perpetrators

15  returned to the car and drove away with Hanna.  Petitioner was behind the wheel, and almost ran

16  over Brunson.

17      The car was stopped by Red Bluff police a short time later.  Petitioner was the sole

18  occupant.  He was carrying a loaded gun.  Brunson's phone was in the car, and petitioner's

19  fingerprints were on the phone.  A backpack that did not belong to Brunson was also found in the

20  car, and contained items including CDs.

21      Sheri Clayborne, Porche Hanna's mother, testified that on the day before the incident

22  Hanna had brought two tattooed Hispanic men to the house.  Sometime after this visit, gang signs

23  were painted on Clayborne's fence.  When interviewed by police, Clayborne identified petitioner

24  and Acevedo from a photo line-up as the men she had met at her house.

25      A month prior to the incident, Special Agent Marquez of the California Department of

26

27  [1]  "CT" refers to the Clerk's Transcript on Appeal, lodged in this court on August 7, 2013 (see
    ECF No. 17).

28

2

1  Corrections had contacted petitioner in the course of a multi-agency investigation.  Petitioner had

2  visible tattoos on his hands, arms and earlobes, including numerous references to the Sureños and

3  to the South Side Locos ("SSL"), a Sureño gang operating in Tehama County.  Petitioner

4  admitted to Agent Marquez that he was an active member of the SSL.  Petitioner's gang moniker

5  was "Lil Bird."

6         Acevedo was also a known Sureño.

7         Tehama County Sheriff's Sergeant David Kain testified as an expert on Hispanic gangs in

8  Tehama County.  RT 438-85.[2]  Sgt. Kain reviewed the taking of Brunson's car to determine

9  whether it was gang-related.  Based on the investigation reports, petitioner's jail classification

10 forms, photographs of petitioner's tattoos, and other evidence including photographs and ring

11 tones from petitioner's cell phone and writing on a CD found in the victim's car, Sgt. Kain opined

12 that petitioner was an active member of the Sureño gang on the date of the offense.  Sgt. Kain

13 also pointed to petitioner's association with other known Sureños both prior to the incident and in

14 jail following his arrest, and to petitioner's admission of gang membership on several occasions.

15 RT 459-68.

16        Sgt. Kain was asked to respond to a hypothetical carjacking and robbery in which two

17 known gang members produce a firearm and force the driver to travel to a remote location.  Once

18 there, the driver is pushed from the car, held at gunpoint while he is searched and personal items

19 are removed from his pockets, and left on the ground while the gang members flee in his car.  Sgt.

20 Kain opined that such a crime would benefit the gang in several respects: the person wielding the

21 gun would gain respect within the gang for intimidating the victim; the two perpetrators would

22 each "feed off of" the joint intimidation of the victim; and the gang members could later use the

23 stolen items, including the car.  Sgt. Kain further opined that the hypothetical crime would

24 promote, further and benefit the gang as a whole, because it would increase the gang's status and

25 garner respect from other gang members.  RT 480-83.  Apart from the issue of benefit, Sgt. Kain

26

27 [2] "RT" refers to the Reporter's Transcript on Appeal, lodged in this court on August 7, 2013 (see ECF No. 17).

28

1  opined that the two hypothetical individuals would have been acting "in association with" a

2  criminal street gang.  RT 482.

3      The defense presented no evidence.

4      On September 20, 2010, the jury found petitioner guilty on all counts, and found the

5  special allegations to be true.  CT 123-31.  Petitioner was sentenced on October 26, 2010, to an

6  aggregate term of 25 years to life in prison.  CT 159-60.

7      B.  Post-Conviction Proceedings

8      The California Court of Appeal affirmed the judgment on August 8, 2012.  Lodged Doc.

9  1.  The California Supreme Court denied review on October 17, 2012.  Lodged Doc. 6.  Petitioner

10  did not seek collateral relief in the state courts.

11      The federal habeas petition was timely filed on March 31, 2013.[3]  ECF No 1.  Respondent

12  answered on the merits, on July 18, 2013.  ECF No. 15.  Petitioner thereafter submitted a traverse.

13  ECF No. 20.

14  II.  Standards Governing Habeas Relief Under the AEDPA

15      28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of

16  1996 ("AEDPA"), provides in relevant part as follows:

17  (d) An application for a writ of habeas corpus on behalf of a person

18  in custody pursuant to the judgment of a state court shall not be
granted with respect to any claim that was adjudicated on the merits
in State court proceedings unless the adjudication of the claim –

19

20  (1) resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States; or

21

22  (2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the
State court proceeding.

23

24      The statute applies whenever the state court has denied a federal claim on its merits,

25  whether or not the state court explained its reasons.  Harrington v. Richter, 131 S. Ct. 770, 785

26  _____

27  [3]  The petition, docketed on April 5, 2013, was signed by petitioner on March 31, 2013.  Under
the prison mailbox rule, the earlier date is considered the constructive filing date.  See Houston v.
Lack, 487 U.S. 266, 276 (1988); Jenkins v. Johnson, 330 F.3d 1146, 1149 n.2 (9th Cir. 2003).

28

4

1   (2011).  State court rejection of a federal claim will be presumed to have been on the merits

2   absent any indication or state-law procedural principles to the contrary.  Id. at 784-785 (citing

3   Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is

4   unclear whether a decision appearing to rest on federal grounds was decided on another basis)).

5   "The presumption may be overcome when there is reason to think some other explanation for the

6   state court's decision is more likely."  Id. at 785.

7        The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal

8   principle or principles" previously articulated by the Supreme Court.  Lockyer v. Andrade, 538

9   U.S. 63, 71-72 (2003).  Clearly established federal law also includes "the legal principles and

10   standards flowing from precedent."  Bradley v. Duncan, 315 F.3d 1091, 1101 (9th Cir. 2002)

11   (quoting Taylor v. Withrow, 288 F.3d 846, 852 (6th Cir. 2002)).  Only Supreme Court precedent

12   may constitute "clearly established Federal law," but circuit law has persuasive value regarding

13   what law is "clearly established" and what constitutes "unreasonable application" of that law.

14   Duchaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 2000); Robinson v. Ignacio, 360 F.3d 1044,

15   1057 (9th Cir. 2004).

16        A state court decision is "contrary to" clearly established federal law if the decision

17   "contradicts the governing law set forth in [the Supreme Court's] cases."  Williams v. Taylor, 529

18   U.S. 362, 405 (2000).  A state court decision "unreasonably applies" federal law "if the state

19   court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to

20   the facts of the particular state prisoner's case."  Id. at 407-08.  It is not enough that the state court

21   was incorrect in the view of the federal habeas court; the state court decision must be objectively

22   unreasonable.  Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

23        Review under § 2254(d) is limited to the record that was before the state court.  Cullen v.

24   Pinholster, 131 S. Ct. 1388, 1398 (2011).  The question at this stage is whether the state court

25   reasonably applied clearly established federal law to the facts before it.  Id.  In other words, the

26   focus of the § 2254(d) inquiry is "on what a state court knew and did."  Id. at 1399.  Where the

27   state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is confined to "the

28   state court's actual reasoning" and "actual analysis."  Frantz v. Hazey, 533 F.3d 724, 738 (9th

5

1   Cir. 2008) (en banc).  A different rule applies where the state court rejects claims summarily,

2   without a reasoned opinion.  In <u>Richter</u>, <u>supra</u>, the Supreme Court held that when a state court

3   denies a claim on the merits but without a reasoned opinion, the federal habeas court must

4   determine what arguments or theories may have supported the state court's decision, and subject

5   those arguments or theories to § 2254(d) scrutiny.  <u>Richter</u>, 131 S. Ct. at 786.

6   III.      <u>Sufficiency of Evidence to Support Gang Charge and Enhancements</u>

7          A.  <u>Petitioner's Claim</u>

8          Petitioner alleges that the evidence presented at trial was insufficient to support his

9   conviction on Count III (street terrorism in violation of Cal. Pen. Code § 186.22(a)), or the special

10  allegation that he committed the carjacking and robbery for the benefit of a criminal street gang

11  (Cal. Pen. Code § 186.2(b)(4) & (b)(1)(c)).  ECF No. 1 at 4, 7.[4]  Petitioner contends that his

12  federal due process rights were violated by conviction and enhanced sentencing in the absence of

13  evidence sufficient to prove gang-relatedness beyond a reasonable doubt.  <u>Id.</u> at 7-22.

14         B.  <u>The Clearly Established Federal Law</u>

15         Due process requires that each essential element of a criminal offense be proven beyond a

16  reasonable doubt.  <u>In re Winship</u>, 397 U.S. 358, 364 (1970).  In reviewing the sufficiency of

17  evidence to support a conviction, the question is "whether, viewing the evidence in the light most

18  favorable to the prosecution, *any* rational trier of fact could have found the essential elements of

19  the crime beyond a reasonable doubt."  <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1974).  If the

20  evidence supports conflicting inferences, the reviewing court must presume "that the trier of fact

21  resolved any such conflicts in favor of the prosecution," and the court must "defer to that

22  resolution."  <u>Id.</u> at 326; <u>see also</u> <u>Juan H. v. Allen</u>, 408 F.3d 1262, 1274, 1275 & n.13 (9th Cir.

23  2005).

24         In order to grant a writ of habeas corpus under AEDPA, the court must find that the

25  decision of the state court reflected an objectively unreasonable application of <u>Jackson</u> and

26

27  _____
    [4]  Citations to court documents refer to the page numbers assigned by the court's electronic
    docketing system.

28

1    Winship to the facts of the case.  Juan H., 408 F.3d at 1274.  The federal habeas court determines

2    the sufficiency of the evidence in reference to the substantive elements of the criminal offense as

3    defined by state law.  Jackson, 443 U.S. at 324 n.16; Chein v. Shumsky, 373 F.3d 978, 983 (9th

4    Cir. 2004).

5         C.  The State Court's Opinion

6         This claim was raised on direct appeal.  Because the California Supreme Court denied

7    discretionary review, the opinion of the California Court of Appeal constitutes the last reasoned

8    decision on the merits and is the subject of habeas review in this court.  See Ylst v. Nunnemaker,

9    501 U.S. 797 (1991); Ortiz v. Yates, 704 F.3d 1026, 1034 (9th Cir. 2012).

10        The California Court of Appeal ruled as follows:

11            [Petitioner] contends his count III conviction and the street gang
12            enhancements on counts I and II must be reversed because there
             was insufficient evidence he actively participated in a criminal
13            street gang or committed the carjacking and robbery for the benefit
             of a street gang.  Specifically, he claims (1) his gang membership
14            was insufficient to prove he committed the crimes for the benefit of
             his gang, or that he actively participated in a gang; (2) Sergeant
15            Kain's "unsupported" opinion was not substantial evidence that
             defendant committed the crimes for the benefit of a gang; and (3)
16            the gang graffiti at Hanna's residence was not substantial evidence
             that the crimes were gang related. These contentions have no merit.

17            "On appeal, the test of legal sufficiency is whether there is
18            substantial evidence, i.e., evidence from which a reasonable trier of
             fact could conclude that the prosecution sustained its burden of
19            proof beyond a reasonable doubt. [Citations.] Evidence meeting this
             standard satisfies constitutional due process and reliability
20            concerns. [Citations.] [¶] While the appellate court must determine
             that the supporting evidence is reasonable, inherently credible, and
21            of solid value, the court must review the evidence in the light most
             favorable to the [judgment], and must presume every fact the jury
22            could reasonably have deduced from the evidence. [Citations.]
             Issues of witness credibility are for the jury. [Citations.]" (People v.
23            Boyer (2006) 38 Cal.4th 412, 479-480.) If the circumstances
             reasonably justify the trier of fact's findings, reversal of the
24            judgment is not warranted simply because the circumstances might
             also be reconciled with a contrary finding. (People v. Albillar
25            (2010) 51 Cal.4th 47, 60.) This standard of review applies to
             charged counts as well as enhancements. (Ibid; People v. Wilson
26            (2008) 44 Cal.4th 758, 806.)

27            To establish the count III offense (§ 186.22, subd. (a)), the
             prosecution must prove that defendant (1) actively (as opposed to
28            nominally or passively) participated in a criminal street gang, (2)
             knew that the gang's members engage in or have engaged in a

                                      7

pattern of criminal gang activity, and (3) willfully promoted, furthered, or assisted in any felonious conduct by members of that gang. (People v. Lamas (2007) 42 Cal.4th 516, 523.) The criminal conduct promoted, furthered, or assisted need not itself be gang-related. (People v. Albillar, supra, 51 Cal.4th at p. 55.)

Section 186.22, subdivision (b)(1) provides a sentence enhancement for "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ." (E.g., People v. Williams (2009) 170 Cal.App.4th 587, 625.) Because there rarely is direct evidence that a crime was committed for the benefit of a gang, the trier of fact may infer the requisite mental state from "how people act and what they say." (People v. Margarejo (2008) 162 Cal.App.4th 102, 110.)

*Gang Membership*

[Petitioner] notes that section 186.22 "does not criminalize mere gang membership." Specifically, he claims his "mere membership in a gang was insufficient, by itself, to prove" that the crimes were committed "for the benefit of" the gang. (§ 186.22, subd. (b)(1).) However, the statute is satisfied by evidence that the crime was (1) for the benefit of, (2) at the direction of, or (3) in association with, the gang. (People v. Morales (2003) 112 Cal.App.4th 1176, 1198 (Morales).) Here, [petitioner] committed the crime in concert with Acevedo, another member of his gang. "Thus, the jury could reasonably infer the requisite association from the very fact that defendant committed the charged crimes in association with [a] fellow gang member[]." (Ibid.) Evidence of "benefit" by the gang was not required.

Morales acknowledged it was "conceivable that several gang members could commit a crime together, yet be on a frolic and detour unrelated to the gang." (112 Cal.App.4th at p. 1198.) [Petitioner] posits that this is what happened here. He notes that Brunson never observed any indication that either perpetrator was related to a gang. In his view, "[t]here was nothing to indicate that [the perpetrators'] intent was anything other than purely personal, that is, to carjack and rob for their personal gain."

However, [petitioner] had visible gang tattoos on his fingers and ear lobes, and he took no evident steps to conceal those body parts. Brunson's failure to observe the tattoos may be attributed to his being seated in front of defendant in the car during most of their time together. Thus, reasonable jurors could deduce that defendant intended to instill fear and obtain compliance based upon his status as a gang member. The jury was not compelled to find that the incident was a purely personal frolic or detour unrelated to the gang. The fact the jury could have done so does not require reversal of the judgment. (People v. Albillar, supra, 51 Cal.4th at p. 60.)

[Petitioner] may be understood to contend that there was insufficient evidence he acted "with the specific intent to promote,

8

further, or assist in any criminal conduct by gang members . . . ." (§ 186.22, subd. (b)(1).) The point has no merit.

"'Commission of a crime in concert with known gang members is substantial evidence which supports the inference that the defendant acted with the specific intent to promote, further or assist gang members in the commission of the crime.'" (People v. Miranda (2011) 192 Cal.App.4th 398, 412, quoting People v. Villalobos (2006) 145 Cal.App.4th 310, 322; see Morales, supra, 112 Cal.App.4th at p. 1198 ["very fact that defendant committed the charged crimes in association with fellow gang members" supports the enhancement].) In Miranda, the defendant and two codefendants were members or associates of the same gang. (192 Cal.App.4th at p. 412.) In Villalobos, a non-gang member's commission of the crime in concert with her known gang member boyfriend was sufficient evidence of specific intent to promote, further, or assist criminal conduct by a gang member. (145 Cal.App.4th at p. 322.) In Morales, the defendant and two co-participants were members of the same gang. (112 Cal.App.4th at p. 1183.) Here, [petitioner's] commission of the crime with Acevedo was sufficient to show specific intent to assist a gang member in the commission of a crime.

*Expert Opinion*

[Petitioner] argues Sergeant Kain's opinion that defendant's "crimes were committed for the benefit of a street gang" is "not entitled to any weight" because it is "inconsistent with the evidence and purely speculative." (Citing, e.g., People v. Ochoa (2009) 179 Cal.App.4th 650, 661-662; People v. Ramon (2009) 175 Cal.App.4th 843, 851.) Because, as we have seen, there was sufficient evidence the crimes were committed in association with the gang (Morales, supra, 112 Cal.App.4th at p. 1198), it is not necessary to consider the sufficiency of evidence on the alternative issue of benefit.

*Gang Graffiti*

This leaves [petitioner's] contention that the evidence of gang graffiti at Hanna's residence was not substantial evidence that the crimes were gang related. He notes that the graffiti appeared days or weeks following the offense while he was incarcerated. In his view, even if the graffiti was made by members of his gang, in support of him, the graffiti's presence is not probative of whether defendant had committed the present crimes for the benefit of the gang.

For the reasons we have stated, it is not necessary to consider whether the present crimes were committed for the benefit of the gang. Thus, we need not address whether the graffiti is relevant to the benefit issue. The conviction and true findings are not based upon the graffiti and are supported by substantial evidence.

Lodged Doc. 1 at 10-15.

D. <u>Objective Unreasonableness Under 28 U.S.C. § 2254(d)</u>

The California Court of Appeal did not unreasonably apply clearly established federal law.  As <u>Jackson v. Virginia</u> requires, the court reviewed the evidence in the light most favorable to the prosecution, and concluded that it supported a rational finding that the carjacking was gang-related.  In light of the trial record as a whole, that conclusion was not unreasonable.  Petitioner's own acknowledged gang membership, and the fact that he committed the carjacking and robbery in concert with a fellow gang member, was enough to rationally support the jury's conclusion as to Count III that he had assisted in the felonious conduct of another gang member.  <u>See</u> Cal. Pen. Code § 186.22(a).  The same facts support the inference that the crime was committed in association with the gang, and with the specific intent to assist in criminal conduct by gang member, as required for the gang enhancement.  <u>See</u> Cal. Pen. Code 186.22 (b)(1).  The inference that the carjacking was gang-related was not compelled by the evidence, but it was a rational inference and therefore may not be disturbed on post-conviction review.  <u>Jackson</u>, 443 U.S. at 326.

This court may not disturb the state court's holding that, as a matter of California law, evidence sufficient to support a finding that the crimes were committed in association with the gang moots the question whether there was sufficient evidence to prove that the crimes were committed for the benefit of the gang.  <u>See</u> <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005) (federal habeas court bound by state court's interpretation of state law).

For these reasons, petitioner is not entitled to relief on Claim One.

IV.     <u>Improper Expert Testimony</u>

A. <u>Petitioner's Claim</u>

Petitioner alleges that the trial court improperly allowed the prosecution expert to testify in the form of a hypothetical.  ECF No. 1 at 4.  He contends that his federal due process rights were violated by the erroneous testimony.  <u>Id.</u> at 22-31.

B. <u>The Clearly Established Federal Law</u>

Errors of state law do not present constitutional claims cognizable in habeas.  <u>Pulley v. Harris</u>, 465 U.S. 37, 41 (1984).  The erroneous admission of evidence violates due process only if

10

1    the evidence is so irrelevant and prejudicial that it renders the trial as a whole fundamentally

2    unfair.  Estelle v. McGuire, 502 U.S. 62 (1991).

3            C.   The State Court's Opinion

4            The California Court of Appeal, in the last reasoned decision adjudicating this issue, held

5    as follows:

6            [Petitioner's] sole objection was to the foundation for Sergeant
7            Kain's opinion. That objection was initially sustained but ultimately
             overruled. [Petitioner] did not object to either of Kain's opinions,
8            i.e., that [petitioner] was a gang member, and that the hypothetical
             crime would benefit the gang. In particular, [petitioner] did not
9            object on the specific ground asserted here, that Kain's response to
             the hypothetical scenario was improper opinion testimony. (Evid.
10           Code, § 353; People v. Geier (2007) 41 Cal.4th 555, 609.) Thus, the
             claim is forfeited on appeal. (People v. Valdez (1997) 58
11           Cal.App.4th 494, 505 [failure to object to gang expert's testimony
             forfeits issue].)

12           [Petitioner's] federal due process claim is forfeited for the same
13           reason. In People v. Partida (2005) 37 Cal.4th 428, on which
             [petitioner] relies, "a timely and specific objection to the admission
14           of evidence was made on state law grounds. The issue was whether
             that objection was sufficient to preserve a federal due process claim
15           where the due process claim was merely 'an additional legal
             consequence of objection from which it could be argued that the
16           constitutional claim flowed. Accordingly, we conclude that
             [Petitioner's] failure to object forfeits his [federal due process]
17           claim on appeal." (People v. Geier, supra, 41 Cal.4th at pp. 610-
             611.)

18           In any event, [petitioner's] argument has no merit. The trial court
19           did not allow Sergeant Kain to "render the opinion that [petitioner]
             committed the crimes for the benefit of his gang." (Italics added.)
20           Rather, Kain opined that a hypothetical crime benefited a
             hypothetical gang in several respects. "Even if expert testimony
21           regarding the defendants themselves is improper, the use of
             hypothetical questions is proper." (People v. Vang (2011) 52
22           Cal.4th 1038, 1047, fn. 3 (Vang).) [Footnote omitted.]

23           Thus, Sergeant Kain did not offer an improper opinion on
             [petitioner's] guilt, either of count III and the enhancements as a
24           whole or of the particular elements of knowledge and specific
             intent. Opinions on guilt or innocence are inadmissible because the
25           trier of fact is as competent as a witness to weigh the evidence and
             draw conclusions on the issue of guilt. (Vang, supra, 52 Cal.4th at
26           p. 1047.) "But [Kain] properly could, and did, express an opinion,
             based on hypothetical questions that tracked the evidence, whether
27           the [offenses], if the jury found [they] in fact occurred, would have
             been for a gang purpose." (Id. at p. 1048.)

28

                                        11

[Petitioner] complains that the prosecutor used "a blatant hypothetical where it is clear to everyone in the courtroom that the person at issue in the hypothetical question was the defendant." In his view, it is "disingenuous" to allow experts to testify to the ultimate facts at issue under the "guise" of hypothetical questions. Vang rejected identical contentions explaining: "Hypothetical questions must not be prohibited solely because they track the evidence too closely, or because the questioner did not disguise the fact the questions were based on the evidence." (52 Cal.4th at p. 1051.)

Finally, for the reasons expressed in Vang, admission of Sergeant Kain's opinion was not fundamentally unfair and did not violate [petitioner's] federal right to due process of law. (E.g., Estelle v. McGuire (1991) 502 U.S. 62, 70 [116 L.Ed.2d 385, 397].) Reversal is not required.

Lodged Doc. 1 at 17-19.

D. Procedural Default

Respondent contends that petitioner's claim is procedurally defaulted due to his failure to make a timely and specific objection. ECF No. 15 at 14. Respondent does not, however, brief the issue of default.

As a general rule, a federal habeas court will not review a claim rejected by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment. Coleman v. Thompson, 501 U.S. 722, 729 (1991). The Ninth Circuit has squarely held that California's contemporaneous objection rule is both independent and adequate within the meaning of Coleman and progeny, and therefore supports application of the procedural default doctrine. Melendez v. Pliler, 288 F.3d 1120, 1125 (9th Cir. 2002); see also Vansickel v. White, 166 F.3d 953, 957-58 (9th Cir.), cert. denied, 528 U.S. 965 (1999). Accordingly, petitioner's claim is defaulted absent a showing of cause for the default and actual prejudice as a result of the alleged violation of federal law. Coleman, 501 U.S. at 753.

Petitioner has made no showing related to cause and prejudice. However, the undersigned finds that respondent's one-sentence invocation of the procedural default doctrine, in what amounts to a throw-away line, did not put petitioner on notice of the need to do so. Accordingly, because the claim may be denied on the merits for the reasons now explained, the court exercises

12

1    its discretion to bypass the issue of procedural default.  See Franklin v. Johnson, 290 F.3d 1223,

2    1232 (9th Cir. 2002).

3              E.   Objective Unreasonableness Under 28 U.S.C. § 2254(d)

4         The state court reasonably held that Sgt. Kain's testimony regarding the hypothetical did

5    not violate the due process standards articulated by the United States Supreme Court in Estelle,

6    supra.  Even assuming for purposes of argument that the jury would have understood Sgt. Kain to

7    be expressing an opinion as to petitioner's guilt, no United States Supreme Court precedent

8    clearly establishes that due process is violated by an expert opinion on an ultimate issue.  See

9    Moses v. Payne, 543 F.3d 1090, 1105-06 (9th Cir. 2008) (rejecting, as unsupported by clearly

10   established federal law, claim that opinion testimony improperly intruded on the province of the

11   jury and thereby violated due process).  Indeed, the United States Supreme Court has never held

12   that the admission of *any* type of evidence violates due process.  See Holley v. Yarborough, 568

13   F.3d 1091, 1101 (9th Cir. 2009) (Supreme Court has never "made a clear ruling that admission of

14   irrelevant or prejudicial evidence constitutes a due process violation sufficient to warrant issuance

15   of the writ.").  Accordingly, the state court cannot have unreasonably applied federal law within

16   the meaning of the AEDPA.  See Wright v. Van Patten, 552 U.S. at 125-26; Moses, 543 F.3d at

17   1098.

18        The Court of Appeal's holding that the testimony was not improper is a determination of

19   California law that may not be revisited here.  See Lewis v. Jeffers, 497 U.S. 764, 780 (1990)

20   (federal habeas corpus relief does not lie for errors of state law); Bradshaw v. Richey, 546 U.S. at

21   76 (federal habeas court bound by state court's interpretation of state law).  The only question

22   cognizable in this court is whether admission of the testimony rendered the trial fundamentally

23   unfair.  Estelle, 502 U.S. at 72.  In light of the trial record as a whole, it was not unreasonable of

24   the Court of Appeal to answer that question in the negative.  The defense had a full opportunity to

25   cross-examine Sgt. Kain and to argue the issue to the jury, and the jury was properly instructed

26   regarding the evaluation of expert testimony and the function of hypothetical questions.  CT 84.[5]

27   _____

28   [5] "Witnesses were allowed to testify as experts and to give opinions.  You must consider the
     (continued…)

1    For these reasons, petitioner is not entitled to relief on Claim Two.

2    V.    Certificate of Appealability

3    Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States

4    District Courts, "[t]he district court must issue or a deny a certificate of appealability when it

5    enters a final order adverse to the applicant."  Rule 11, 28 U.S.C. foll. § 2254.  A certificate of

6    appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial

7    showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The court must either

8    issue a certificate of appealability indicating which issues satisfy the required showing or must

9    state the reasons why such a certificate should not issue.  Fed. R. App. P. 22(b).  For the reasons

10   set forth herein, petitioner has not made a substantial showing of the denial of a constitutional

11   right.  Therefore, no certificate of appealability should issue.

12   CONCLUSION

13   For all the reasons explained above, the state courts' denial of petitioner's claims was not

14   objectively unreasonable within the meaning of 28 U.S.C. § 2254(d).  Accordingly, IT IS

15   RECOMMENDED that the petition for writ of habeas corpus be denied.

16   ////

17   These findings and recommendations are submitted to the United States District Judge

18   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

19   after being served with these findings and recommendations, any party may file written

20   objections with the court and serve a copy on all parties.  Such a document should be captioned

21   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

22

23   opinions, but you are not required to accept them as true or correct.  The meaning and importance
     of any opinion are for you to decide. . . .  An expert witness may be asked a hypothetical question.

24   A hypothetical question asks the witness to assume certain facts are true and to give an opinion
     based on the assumed facts.  It is up to you to decide whether an assumed fact has been proved.  If

25   you conclude that an assumed fact is not true, consider the effect of the expert's reliance on that
     fact in evaluating the expert's opinion."  CT 84.  See also CT 69 (prosecution burden and

26   standard of proof beyond a reasonable doubt), 70 (jury's job to decide the facts), 72 (reliance on

27   circumstantial evidence to prove facts beyond a reasonable doubt), 73 (use of circumstantial
     evidence to prove intent).

28

1   shall be served and filed within fourteen days after service of the objections.  The parties are

2   advised that failure to file objections within the specified time may waive the right to appeal the

3   District Courts order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

4   DATED: April 8, 2015

5

6   ALLISON CLAIRE
    UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28